Enola C. Hartley v. Commissioner.
Hartley v. Commissioner
Docket No. 4355-65.
United States Tax Court
T.C. Memo 1967-38; 1967 Tax Ct. Memo LEXIS 224; 26 T.C.M. (CCH) 186; T.C.M. (RIA) 67038; February 28, 1967
*224 M. R. Nachman, Jr., for the petitioner. Robert G. Faircloth, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioner's 1960 income tax in the amount of $77,254.04. The deficiency results from respondent's determination that *225 when petitioner incorporated her sole proprietorship business in 1960 she transferred to the corporation all and not a specified portion of her sole proprietorship business assets and received back not only stock but other property in the form of the corporation's one hundred thousand dollar note, and certain other credits. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioner, a widow, resides in Montgomery, Alabama, and she filed her income tax return for the year 1960 with the district director of internal revenue at Birmingham. Prior to 1960, petitioner owned a sole proprietorship in Montgomery, Alabama, known as the Hartley Boiler Works. Its business was that of buying, selling, and fabricating structural steel. Petitioner had operated this business as a sole proprietorship since 1939 as had her husband before her from 1887 until his death in 1939. Alfred J. Gamble, the husband of petitioner's niece, Billye Gamble, was the superintendent in charge during the period prior to the incorporation of the proprietorship. For at least two years prior to 1960, Gamble and petitioner's accountant, lawyer, and banker had advised petitioner, *226 because of her advanced years and her illness from heart attacks, to incorporate the business. Petitioner was loathe to do so, largely because of the memory of her husband and her inclination to follow his business practice. Finally her advisors prevailed and she decided to incorporate under the laws of Alabama. On January 19, 1960, her lawyer brought to her home the necessary documents to accomplish the incorporation of the proprietorship, which she signed and executed on that day. The first such document is the Declaration of Incorporation of Hartley Boiler Works, Inc., sometimes referred to as the charter, which recites that petitioner, Alfred J. Gamble, and Billye Gamble are the incorporators. The following are some of the paragraphs of this document: III. LOCATION. The location of the principal office and place of business of the corporation shall be in the City and County of Montgomery, State of Alabama. IV. CAPITAL STOCK. The total number of shares of stock which the corporation shall have authority to issue is 3000 shares of the par value of $100.00 each. The amount of capital stock with which it will begin business is $300,000.00. V. @OFFICER TO RECEIVE *227 SUBSCRIPTIONS. The name and postoffice address of the officer or agent designated by the corporation to receive subscriptions to the capital stock is Enola C. Hartley, P.O. Box 310, Montgomery, Alabama. VI. INCORPORATORS AND SHARES. The names and postoffice addresses of the incorporators, and the number of shares subscribed for by each, are as follows: Name and Address
No. of Shares
Enola C. Hartley,
Montgomery, Alabama
2998
Alfred J. Gamble,
Montgomery, Alabama
1
Billye Gamble,
Montgomery, Alabama
1
Total
3000
X. STATEMENT AS TO SUBSCRIPTIONS TO CAPITAL STOCK. Attached hereto is a statement under oath of the said Enola C. Hartley, the person authorized by the incorporators to receive subscriptions to the capital stock of the corporation, marked Exhibit A and made a part hereof, which said statement shows the amount of capital stock of the corporation which has been subscribed for and the amount which has been paid in cash and also the amount which has been paid in property, showing the character and a brief description of such property, and when it is to be transferred to the corporation; together with a copy of the subscription list. *228 Attached to the above document was a document, signed by the three incorporators entitled "SUBSCRIPTION LIST" which provides as follows: We the undersigned Enola C. Hartley, Alfred J. Gamble and Billye Gamble, do hereby subscribe for the number of shares of the capital stock of Hartley Boiler Works, Inc., of the par value of $100 each, set opposite our respective signatures; and the undersigned Alfred J. Gamble and Billye Gamble agree to pay in cash $100.00 for each share subscribed for by them; and the undersigned Enola C. Hartley agrees to pay for the shares subscribed for by her in cash or in property of the reasonable value of the amount of her subscription, either or both. The character and brief description of the said property to be transferred and conveyed by her is the real property owned by her and a leasehold interest in all leased real property on which Hartley Boiler Works is now located in North Montgomery, Alabama, and also all cranes, machinery, patterns, buildings, supplies, inventories, accounts payable and debts, and other property used by or in connection with Hartley Boiler Works in North Montgomery, Alabama. Said property will be transferred and conveyed by *229 the undersigned owner thereof to Hartley Boiler Works, Inc., on January 19, 1960, contemporaneous with the issuance to her of the shares of stock to which she subscribed. * * *
Contemporaneously with the execution of the foregoing documents and as a part of the incorporating documents petitioner executed under oath her affidavit of receipt of subscriptions to the capital stock which recites that she is the person authorized by the incorporators to receive subscriptions to the capital stock of Hartley Boiler Works, Inc. and the last two paragraphs of said affidavit are as follows: Affiant further certifies that said corporation has received from said subscribers in cash the amount of their subscriptions payable in cash; and has received from the subscribers whose subscriptions were payable in property; property of the reasonable value of $300,000.00; for which 3000 shares of the corporation are being issued. Affiant further certifies that the corporation has been paid in full for the shares of stock subscribed for by the subscribers, each paying in full his or her respective subscription. Also contemporaneously with the execution of the foregoing documents there was executed *230 the document entitled "SALES AGREEMENT", also called Exhibit 5, which provides as follows: STATE OF ALABAMA, MONTGOMERY COUNTY. SALES AGREEMENT. THIS AGREEMENT by and between Mrs. Enola C. Hartley and Hartley Boiler Works, Inc., and Alabama corporation being formed contemporaneously with the execution of this agreement, WITNESSETH: WHEREAS for many years Mrs. Enola C. Hartley has operated the business known as Hartley Boiler Works as sole proprietorship; and WHEREAS she now desires to incorporate the business so as to have a paid-in capital of Three Hundred Thousand Dollars ($300,000.00), and to that end, wishes to convey and transfer to the corporation real estate, the buildings located thereon and the tangible personal property heretofore used by her in the operation of the business, together with certain of the accounts receivable in order to make the net value of the properties conveyed and transferred, less the debts and liabilities of the business formerly operated by her, which are being assumed by the corporation, equal the sum of Three Hundred Thousand Dollars, the parties hereto agreeing that the book value of the assets being conveyed and transferred are *231 their actual value: NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES, and the mutual covenants and agreements herein contained, IT IS MUTUALLY AGREED between the parties hereto as follows: 1. By separate deed or deeds, Mrs. Hartley is conveying to Hartley Boiler Works, Inc. the three parcels of real estate located on or in the vicinity of Railroad Street and known as No. 134 Railroad Street, in Montgomery, Alabama, and the buildings and improvements thereon now being used in the operation of said business. 2. Mrs. Hartley hereby transfers and assigns all existing leases with Louisville and Nashville Railroad Company, the same being hereby assumed by Hartley Boiler Works, Inc. 3. Mrs. Hartley hereby transfers, sets over and assigns to Hartley Boiler Works, Inc. all tangible personal property and fixtures now being used in the operation of Hartley Boiler Works, a proprietorship, including, without limiting the generality of the foregoing, all materials and supplies on hand, inventory, hand tools, motor vehicles and other tangible personal property as itemized on the list attached hereto marked Exhibit 1 and made a part hereof. 4. Hartley Boiler Works, Inc. covenants and agrees *232 that it hereby assumes and agrees to pay all outstanding indebtedness of Hartley Boiler Works, all bills payable, all notes due The First National Bank of Montgomery, and further covenants and agrees to perform all contracts of Hartley Boiler Works, a proprietorship, and will indemnify and hold harmless Mrs. Hartley against any and all liability thereunder. 5. In consideration of the foregoing transfer of assets, Hartley Boiler Works, Inc. has issued to Mrs. Enola C. Hartley 2998 shares of the capital stock of said Company, and to Alfred J. Gamble and Billie Gamble 1 share each of said capital stock, the total being 3,000 shares of One Hundred Dollars par common capital stock, that being all of the stock of the corporation. IN WITNESS WHEREOF, Mrs. Enola C. Hartley has hereunto set her hand and seal, and Hartley Boiler Works, Inc. has caused this instrument to be executed in its name by Alfred J. Gamble, as its Exec. Vice President, and attested by John Breedlove, as its Secretary, on this 20th day of January, 1960. /s/ Enola C. Hartley (L.S.) HARTLEY BOILER WORKS, INC., By /s/ Alfred J. Gamble Its ATTEST /s/ John Breedlove Secretary. There was attached to the above *233 Sales Agreement an itemized list, consisting of a page and a half which lists personal property, such as cranes, compressors, lathes, and many other machines and tools, together with four or five trucks and some office equipment. The incorporation papers which were executed in petitioner's home on January 19, 1960, were executed too late for filing in the probate office that day but they were filed in the probate office by petitioner's attorney on January 20, 1960. On February 8, 1960, there was held an organization meeting of the stockholders of Hartley Works, Inc. where officers were elected, by-laws were adopted, and the Certificate of Incorporation dated January 20, 1960 displayed and ordered inserted in the corporation minute books. The minutes of the meeting of the Board of Directors on said February 8, 1960 recite, in part, the following: On motion duly made and seconded, and after consideration and discussion, a resolution was unanimously adopted placing the reasonable value of the property, real and personal, conveyed by Mrs. Enola C. Hartley to the corporation at Two Hundred Ninety-nine Thousand Eight Hundred Dollars ($299,800.00); and further, that there be issued *234 to the stockholders the following shares of stock, all of which have been fully paid for in cash or in property: Mrs. Enola C. Hartley
2998 shares
Alfred J. Gamble
1 share
Billye Gamble
1 share
* * *
It was reported to the Board that because of the lengthy steel strike, which has just ended, the Company has recently received large shipments of steel. After discussion, it was agreed that in order to pay for this, the Company needed to borrow One Hundred Thousand Dollars. Since it already owes a substantial amount to The First National Bank of Montgomery, it was agreed that the Company would borrow One Hundred Thousand Dollars from Mrs. Enola C. Hartley, she agreeing to lend the money in the form of accounts reecivable owned by her, as per list attached hereto. On motion duly made and seconded, it was unanimously resolved that the corporation borrow One Hundred Thousand Dollars from Mrs. Hartley, and that Alfred J. Gamble, as Executive Vice-President, and John Breedlove, as Secretary, be authorized to execute a note, the form of which is attached hereto. Said loan is for a period of one year, with interest at the rate of six per cent per annum. The note, *235 referred to in the above minutes, that was executed by the corporation with its executive vice-president Gamble signing, and delivered to petitioner was executed on February 8, 1960. It is in the amount of $100,000, payable one year after date and with interest at 6 percent from January 1, 1960. An accountant named Crane, who had practiced accounting in Montgomery since 1919 and had handled petitioner's accounting work since the death of her husband in 1939, opened the corporation's books by entries he made sometime between the 15th and 20th of February 1960. He erroneously reflected in the said book entries, the changeover from a proprietorship to a corporation as occurring on January 1, 1960, in that he used the ending balances of the proprietorship on December 31, 1959 as the beginning figures of January 1, 1960 for the corporation on the books of the corporation. Page 50 of the Journal is headed by an entry actually made by Crane sometime after February 10, 1960, which is as follows: "Journal Entries re Incorporation January 1, 1960". This same sheet lists various items as of January 1, 1960 and the last item is "Mrs. T. H. Hartley (a/c Pay) 502 [in the sum of] $2832.26." *236 The corporate ledger account shows a credit of $3,115.49 as of January 22, 1963 in petitioner's notes payable account with the notation "Value of 1 Punch & 1 Friction Saw Bought 5/29/59 plus interest to 12/31/62". Respondent (after some undisputed and unexplained adjustment) included $3,060.42 in his computation of other property gain with respect to this item. The corporation's first income tax return, filed November 25, 1960, was made out by Crane on a 1959 Form 1120. At the top of the first page it is stated it is for the period beginning January 1, 1960 and ending September 30, 1960. However, on page 3 the answer to question H or "Date incorporated" is "January, 1960." The corporation's next return for the period ending September 30, 1962 answers the same question H as to the date of incorporation: "1/20/1960". Respondent's determination of deficiency held the transfer here was a section 351 transfer wherein petitioner in the transfer of her sole proprietorship to the corporation received in addition to the stock "other property" in the form of the $100,000 note and the other credits all in the total value of $105,892.68. Opinion *237 Section 351, I.R.C. 1954, which we have set forth in part in the footnote [1] below provides for the nonrecognition of gain when property is transferred in exchange for stock and immediately thereafter the property owner is in control of the corporation. It prescribes the procedure to be followed that will result in no realized gain when there is a change-over from a business proprietorship to a corporation that actually amounts to nothing more than a change in the form of doing business. However, it does provide for the recognition of gain when the business proprietor who is incorporating his business receives stock and also "other property or money" from the corporation. In the latter event his gain under the statute is limited to "the fair market value of such other property." Sec. 351)a) and (b)(1)(B). *238 The parties here have concentrated their argument on the corporation's $100,000 note given to petitioner and whether it constitutes "other property" within the meaning of the statute. Mention will be made later of the issues with respect to the other two items. It is petitioner's contention that the underlying corporate documents control. These documents show the charter that was recorded on January 20, 1960, which date is admittedly the date the corporation acquired legal existence under Alabama law [2] and the subscription list and the sales agreement or Exhibit 5 which specifies the assets that were transferred, and by obvious elimination, others such as receivables that were not, and the minutes of stockholders' and directors' meetings, and the $100,000 note to petitioner dated February 8, 1960. Petitioner argues that this note transaction was separate and apart from the section 351 exchange. She emphasizes the fact that the note is dated February 8, 1960 and it followed action of the board as reflected in the minutes where decision was made to borrow this sum from petitioner. Petitioner is supported by the testimony of Gamble and her attorney who testified as to her instructions *239 to prepare papers to transfer $300,000 worth of property and the sales agreement which conveys $300,000 worth of assets and does not include accounts receivable. Her attorney stated the sales agreement or Exhibit 5 reflected her decision to retain the other assets of the sole proprietorship, in the form of accounts receivable, as her own. Her attorney also testified he prepared the $100,000 note on February 7, 1960 upon the instructions of Gamble who told him petitioner was willing to lend this sum to the corporation in the form of accounts receivable and the attorney stated he sent the note to Gamble by messenger and the note was executed and the transaction completed on February 8, 1960. It is admitted by both parties that the accounts receivable were the equivalent of cash. Respondent's position is based upon the entries he finds in the books of the corporation and the 1960 income tax return based on such statements. The agent who made his examination sometime after 1962 stated that he was given the books and records of petitioner and the corporation and the incorporation papers and he was aware of the fact that the charter was not *240 filed until January 20, 1960. But he said the books reflected the beginning date of the corporation as January 1, 1960 and he felt the books should control so he considered January 1, 1960 as the effective date for the beginning of the corporation and that during the period January 1, 1960 to January 20, 1960 the corporation was a de facto corporation. In his opening statement respondent's attorney stated that the "respondent contends that there was a de facto corporation, * * * from January 1st, 1960, until the formal documents were recorded * * *." In his brief he carries on his argument that the effective beginning date of the corporation for the purpose of this case was January 1, 1960, even though, as he states: "The effective date of the corporate existence, insofar as the State is concerned, may have been January 20, 1960." It is respondent's position that petitioner transferred all of her proprietorship assets to the corporation on January 1, 1960, which was then in a de facto existence and received back 2,998 shares of stock and other property in the form of the $100,000 note. A short answer to respondent's whole argument is that *241 a de facto corporation does not exist prior to any attempt to form a corporation in accordance with the statutory requirements, 18 C.J.S. Corporation, Sec. 104; Alabama Fidelity Mortgage & Bond Co., v. Dubberly, 198 Ala. 545, 73 So. 911; Payne v. Bracken, 131 Tex. 394, 115 S.W. 2d 903. Respondent cites no authority at all for his position that the corporation had any kind of existence prior to January 20, 1960. He merely states the effective date of its beginning for the purpose of this case is to be governed by the recitations in the books and the statement made in the 1960 income tax return. Recitations, as to its beginning date in corporate books or even its tax returns, cannot create a corporate entity. This corporation just had no existence at all and it could not be the transferee of any property prior to January 20, 1960. The accountant (not an employee) who made the book entries on which respondent relies, about a month after the incorporation, admitted "it was just an error on my part, using January 1." This should have been prefectly obvious to respondent. The recitations in the book entries as *242 to January 1, 1960 transfers had to be erroneous for respondent should have known the named transferee entity was not in existence until January 20, 1960. All of the documents show quite clearly that in this change-over from a proprietorship business to a corporation, the accountant merely used the figures in the books of the business for the first day of the month in which the change-over occurred. This was an obvious error to one examining all of the documents. It might give rise to some sort of deficiency based on charging petitioner with 19 days of proprietorship income in 1960 and giving the corporation some sort of a refund based on excluding such income in its first return. The accountant testified the corporation's 1960 return was not criticized by the examiner and that petitioner who was too aged and infirm to testify had never seen the entries in the books. At any rate, the error hardly justifies the determination of a $77,000 deficiency based on receipt of a $100,000 note as "other property" in a section 351 transfer. Respondent also completely ignores Exhibit 5 which accomplishes the transfer of the tangible business assets to the corporation for the stock and definitely *243 does not transfer any receivables. The proprietorship had well over $100,000 of receivables on which demand had been made and respondent admits these receivables were the equivalent of cash. Thus respondent's position is based upon a de facto corporation doctrine which has no application here, some book entries that are indisputably wrong as to date, and his completely ignoring instruments of transfer and other underlying corporate documents. We find no merit in respondent's position. We hold the assets as described in Exhibit 5 were transferred to the corporation on January 20, 1960 for 2,998 shares of stock; that the bills receivable were not transferred until the $100,000 note transaction of February 8, 1960 and said note does not constitute "other property" within section 351(b) in this section 351 transfer. The two remaining items of "other property" determined by respondent consist of the $2,832.26 account payable to petitioner item and the $3,115.49 note payable credit. The first item of $2,832.26 is called a "balancing figure" in paragraph 5(k) of the taxpayer's petition and in a footnote in her petition. It is explained in the petition that since the "assets could not *244 be 'evened out' at precisely $300,000, an excess in the amount of $2,832.26 was recorded as due petitioner from the corporation." But there is absolutely no testimony with respect to the item. We only have the page from the book, admitted without objection, recording the item. Crane, who evidently posted the item, testified in the case but he was asked no question about it. The footnote in petitioner's brief characterizes this as an obvious balancing figure. But whatever label the petitioner places upon this item, it is obvious that petitioner acquired an unrestricted right to receive this amount from the corporation and such right, it seems clear, is "other property" received by petitioner as a result of the transfer of assets to the corporation and is taxable as such under the provisions of section 351(b). The remaining item of "other property" determined by respondent to have been received in the section 351 exchange is a note payable credit to her on the corporate ledger as of January 22, 1963 in the amount of $3,115.49. This credit was made over two years after incorporation but the notation indicates the credit represents the value of one punch and one friction saw bought May 29, 1959. This *245 item was also treated in cavalier fashion by petitioner. We have Gamble saying this item is "the sale of some scrap steel" after the incorporation. This is the only testimony there is with respect to the item. It is completely meaningless as any explanation. Again, without further discussion, we hold for respondent on the issue on petitioner's failure to sustain her burden of proof. Decision will be entered under Rule 50. Footnotes
1. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR. (a) General Rule. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property. (b) Receipt of Property. - If subsection ( a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then - (1) gain (if any) to such recipient shall be recognized, but not in excess of - * * *
(B) the fair market value of such other property received; * * *↩
2. Title 10, Section 9, Code of Alabama.↩